UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL SALAMI,

       Plaintiff,                    Case No. 1:20-cv-21

v.                                        Honorable Robert J. Jonker

RANDEE REWERTS et al.,

       Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rewerts, Winger, Woodin, and the Gender Dysphoria Recommendation Committee.

## Discussion

### I.  Factual Allegations

Plaintiff Michael Salami is a transgender female, who uses the female name Nikolai-Memet. She presently is incarcerated with the Michigan Department of Corrections

(MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which she complains occurred at that facility. Plaintiff sues Corizon Healthcare, Inc., the Gender Dysphoria Recommendation Committee, and the following DRF officials: Warden Randee Rewerts; Assistant Deputy Warden J. Winger; Resident Unit Manager (RUM) and PREA[1] Coordinator Unknown Niemiec; PREA Coordinator Todd Butler; Dr. Patricia Schmidit; Chief Psychologist Unknown Woodin; and Sergeant Unknown Fountains.

Plaintiff alleges that she has a gender identity disorder (GID), under which she identifies as a highly feminine woman. She dresses as a woman to the extent possible, including making her own panties, wears her hair in pigtails or a ponytail, and speaks in a high voice. Plaintiff alleges that she passed all of her lab tests and signed a treatment contract and waiver of liability on October 18, 2019. Defendant Schmidit told Plaintiff at that time that she would be prescribed 25 mg. of Androgen within two weeks. Plaintiff complains, however, that Defendant Dr. Schmidit, Corizon, and the Gender Dysphoria Recommendation Committee are denying her hormone treatment and refusing her entry into the rolls of transgender female prison inmates. She alleges that they are doing so because, if she receives hormones for one year, they will be required to authorize sexual reassignment surgery. As a result of these Defendants' failures to permit treatment for Plaintiff's GID, she experiences psychological distress and is forced to remain in a male prison, where she is at risk of continued assaults.

On September 22, 2019, inmate McElrath (a/k/a Nacho) approached Plaintiff and attempted to kiss her and digitally penetrate her anus. Plaintiff pushed Nacho away and swore at him. She felt dirty, so she re-showered. She discovered that Nacho continued to watch her as she

---

[1] The Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 et seq., provides national standards and grant funding directed at the prevention, reporting, and enforcement of prison rape.

showered. Plaintiff called the PREA hotline immediately after her shower. She also sent a kite to Defendants Rewerts, Winger, and Niemiec, asking that Nacho be moved. Plaintiff received no response to her reports until five days later, when she heard from Defendant Butler. She was seen by Defendant Niemiec five to eight days after the PREA report. At that interview, Defendant Niemiec stated that he would have Nacho moved the same day, but that did not happen.

Sometime within the next week or so, Defendant Niemiec called Plaintiff into his office and interrogated her. Niemiec called Plaintiff a liar and told her that it was her fault and that she should not joke with people. Nacho was moved to the lower level, but he remained in the same unit as Plaintiff. Plaintiff alleges that Nacho placed "hits" on Plaintiff in front of officers, but they did nothing to protect Plaintiff. (Compl., ECF No. 1, PageID.7.)

On November 6, 2019, at 3:35 a.m., Plaintiff was awakened to go to the office to talk with Defendant Fountains. Plaintiff told Defendant Fountains about Nacho's threats and asked to either be put in protective custody or have a Special Problem Offender Notice (SPON) issued to keep Nacho from being housed in the same facility as Plaintiff. *See* MDOC Policy Directive 03.03.110. Defendant Fountains told Plaintiff, "Stop it. . . . The Administration has no intentions of helping you." (Compl., ECF No. 1, PageID.7.) Following this discussion, Plaintiff again sent kites to Defendants Rewerts, Ringer, and Niemiec, requesting that she be placed in protective custody. Plaintiff alleges that no action was taken by these Defendants in response to the kites.

On November 21, 2019, at approximately 12:35 p.m., Plaintiff began cleaning her room. Nacho's friend, Williams, yelled out that Nacho had hired him to "[b]eat the f**k out of [Plaintiff]." (*Id.*) Williams then either threw or kicked a bucket containing cleaning chemicals at Plaintiff. The bucket hit Plaintiff in the face, stunning her, and the chemicals blinded her temporarily. Williams left, came back, and again threw or kicked a bucket at Plaintiff. Williams

3

again left to get a shank, saying, "Ima stab you for snitching on Nacho." (*Id.*, PageID.15.) Williams returned and forced himself into Plaintiff's cell. Williams began to punch Plaintiff in the skull, face, and sides and tried to pull the knife out of his waistband. At that point, Plaintiff's bunkmate began yelling, "[H]elp – Police." (*Id.*) Williams told the bunkmate to "[k]eep quiet, or he'd be stab[b]ed, raped, and lock[ed] up like another white-boy." (*Id.*) When Williams tried to block the doorway, Plaintiff got up, but Williams punched her to the ground and tried to pull her pants down. Plaintiff escaped Williams' hold and yelled, "Rape" two times, but no staff responded. Plaintiff kicked Williams hard in the leg. She then threw a number of heavy objects at Williams' head and neck. Williams ran out of the cell, and, in fear and anger, Plaintiff tried to follow Williams to injure him, but she ended up locking her cell door. She then smashed Williams' blue glasses, which had been dropped in her cell.

Plaintiff went to health services, where the nurse found multiple bumps on Plaintiff's head and a cut on her inner lip. Plaintiff did not report the PREA violation, because she was afraid that she would be issued a misconduct charge, as had happened to her previously.

On December 3, 2019, Plaintiff wrote both Keith Barber (not a Defendant) and Defendant Butler, asking for a victim advocate under the PREA, for the placement of SPONs on Nacho and Williams, and for therapy authorized by the PREA. She received no response, but four days later, Nacho was moved to Unit 500 and received a ticket. Plaintiff complains, however, that Nacho still has access to her through fellow gang members, whom he can contact through the unit fence. Plaintiff alleges that she has been the subject of unspecified new attempts by Nacho to have others attack Plaintiff, and she contends that she remains at a substantial risk of being injured.

Plaintiff contends that she has suffered physical injury and continues to suffer post-traumatic stress disorder (PTSD) from an earlier sexual assault at a different MDOC facility, which

4

allegedly has been aggravated by the events at DRF. She alleges that Defendants have deprived her of her rights under the Eighth Amendment by failing to protect her, failing to treat her gender identity disorder, and failing to provide counseling for her PTSD. She seeks a temporary and permanent restraining order against Nacho. Plaintiff also suggests that she is entitled to damages, but she does not detail what damages she may seek.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Defendant Gender Dysphoria Recommendation Committee

Although Plaintiff sues the Gender Dysphoria Recommendation Committee, the MDOC has no such committee. Instead, decisions concerning gender dysphoria management are the responsibility of the Gender Dysphoria Collaborative Review Committee. *See* MDOC Policy Directive 04.06.184 ¶ C (eff. June 26, 2017). The Court assumes that Plaintiff intends to sue the Gender Dysphoria Collaborative Review Committee

Regardless of the appropriate name of the committee, that committee is entitled to sovereign immunity. The Gender Dysphoria Collaborative Review Committee is a subdivision of the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh

Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). Where, as here, the committee in issue is merely a subdivision of the MDOC, it too is immune. *C.f. Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (holding that both the MDOC and its subdivision, the Michigan Parole Board, are entitled to immunity under the Eleventh Amendment); *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (Michigan Parole Board entitled to Eleventh Amendment immunity). Therefore, Plaintiff's complaint seeks monetary relief against a defendant who is immune from such relief, Plaintiff's claim against the Gender Dysphoria Collaborative Review Committee is properly dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) and 42 U.S.C. § 1997e(c).

In addition, the State of Michigan (acting through the MDOC and its subdivisions) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the Gender Dysphoria Collaborative Review Committee is also properly dismissed for failure to state a claim.

## IV. Defendants Rewerts, Winger, & Woodin

Plaintiff's only factual allegations against Defendants Rewerts and Winger, are that she sent kites to both Rewerts and Winger, as well as to Defendant Niemiec, complaining about Nacho's initial attempted sexual assault and shortly thereafter about Defendant Niemiec's response to Plaintiff's first kite. Plaintiff's allegations against Defendants Rewerts and Winger amount to a simple claim that they failed to supervise their subordinates and failed to personally respond to Plaintiff's kites about Nacho's earliest actions and about Niemiec's unsatisfactory response to the first kite. Plaintiff makes no factual allegations about Defendant Woodin in the body of the complaint, though she suggests that she sent a kite to a lower-level mental health provider in

December 2019, and she arguably suggests that Defendant Woodin is responsible for his subordinate's actions.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

To the extent that Plaintiff intends to allege that Defendants Rewerts, Winger, and Woodin failed to supervise their subordinates, she alleges nothing more than respondeat superior, which will not support a § 1983 claim. To the extent that Plaintiff alleges that Defendants Rewerts or Winger engaged in any conduct beyond failing to respond to two kites, Plaintiff also fails to state a claim. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or complaint. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Defendants Rewerts and Winger therefore will be dismissed.

With respect to Defendant Woodin, Plaintiff's complaint is devoid of factual allegations. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant Woodin in the body of his complaint.

Moreover, Plaintiff's complaint against Defendant Woodin is not saved by his general references to actions by "Defendants." "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("'This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.'") (quoting *Lanman*, 529 F.3d at 684)). Because Plaintiff fails to make allegations about Defendant Woodin's own active conduct, her complaint against Woodin falls far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Court therefore will dismiss Defendant Woodin from the action.

## V. Remaining Defendants

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state an Eighth Amendment claim against remaining Defendants Niemiec, Corizon, Schmidit, Butler, and Fountains.

## VI. Pending Motions

Plaintiff has filed three motions that are presently pending before the Court. The first is a motion seeking a temporary restraining order (TRO) (ECF No. 3). The second seeks a preliminary injunction (ECF No. 4). Plaintiff also has filed a motion to amend the complaint to seek relief from Defendants solely in their individual capacities (ECF No. 14).

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary

injunctive relief, whether in the form of a TRO or a preliminary injunction, is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same). Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Athough the Court concludes that

Plaintiff's allegations are sufficient to state an Eighth Amendment claim against the remaining officials for failure to treat his GID and failure to protect Plaintiff, it is not at all clear at this juncture that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Since the filing of Plaintiff's complaint and motions, Plaintiff has not attempted to supplement his complaint with allegations about new instances of assault. Moreover, Plaintiff admits in her complaint that inmate Nacho has been moved to a part of the unit where he has less ability to instigate harm to Plaintiff. Although Plaintiff may yet face some risk, she has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Moreover, these factors predominate over any residual risk to Plaintiff of irreparable harm.

Accordingly, Plaintiff's motions seeking a TRO (ECF No. 3) and seeking a preliminary injunction (ECF No. 4) will be denied.

In his final pending motion, Plaintiff seeks to amend his complaint to sue all Defendants solely in their individual capacities. The Court will grant Plaintiff's motion.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Rewerts, Winger, Woodin, and the Gender Dysphoria Recommendation Committee will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Niemiec, Corizon, Schmidit, Butler, and Fountains remain in the case. The Court will deny Plaintiff's motion for temporary restraining order (ECF No. 3) and motion for preliminary injunction (ECF No. 4). The Court will grant Plaintiff's motion to amend his complaint to seek relief from Defendants solely in their individual capacities.

An order consistent with this opinion will be entered.


Dated:  March 20, 2020         /s/ Robert J. Jonker
                               ROBERT J. JONKER
                               CHIEF UNITED STATES DISTRICT JUDGE