UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SALAMI,

          Plaintiff,

v.

RANDEE REWERTS, *et al.*,

          Defendants.

_____/

Case No. 1:20-cv-21

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Michael Salami, a state prisoner in the custody of the Michigan Department of Corrections (MDOC).  This matter is now before the Court on a motion for summary judgment filed by defendants Corizon Health, Inc. ("Corizon") and Patricia Schmidt, D.O. ("Dr. Schmidt") (ECF No. 34).

### I.      Background

Plaintiff filed this lawsuit against nine defendants on January 10, 2020.  Because the present motion involves only defendants Corizon and Dr. Schmidt, the Court will address plaintiff's allegations relevant to them.[1]  The Court summarized plaintiff's claims as follows:

> Plaintiff Michael Salami is a transgender female, who uses the female name Nikolai-Memet. She presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which she complains occurred at that facility. . .

---

1 The Court notes that plaintiff's complaint referred to Dr. Schmidt as Dr. "Schmidit".

Plaintiff alleges that she has a gender identity disorder (GID), under which she identifies as a highly feminine woman. She dresses as a woman to the extent possible, including making her own panties, wears her hair in pigtails or a ponytail, and speaks in a high voice.   Plaintiff alleges that she passed all of her lab tests and signed a treatment contract and waiver of liability on October 18, 2019. Defendant Schmidit [sic] told Plaintiff at that time that she would be prescribed 25 mg. of Androgen within two weeks. Plaintiff complains, however, that Defendant Dr. Schmidit, Corizon, and the Gender Dysphoria Recommendation Committee are denying her hormone treatment and refusing her entry into the rolls of transgender female prison inmates. She alleges that they are doing so because, if she receives hormones for one year, they will be required to authorize sexual reassignment surgery. As a result of these Defendants' failures to permit treatment for Plaintiff's GID, she experiences psychological distress and is forced to remain in a male prison, where she is at risk of continued assaults. . . .

Plaintiff contends that she has suffered physical injury and continues to suffer posttraumatic stress disorder (PTSD) from an earlier sexual assault at a different MDOC facility, which allegedly has been aggravated by the events at DRF.   She alleges that Defendants have deprived her of her rights under the Eighth Amendment by failing to protect her, failing to treat her gender identity disorder, and failing to provide counseling for her PTSD. . . Plaintiff also suggests that she is entitled to damages, but she does not detail what damages she may seek.

Opinion (ECF No. 20, PageID.286-287, 289-290).   On initial screening, the Court concluded that plaintiff's allegations were sufficient to state an Eighth Amendment claim against the two movants, defendants Corizon and Dr. Schmidt.  *Id*. at PageID.298.

## II.    Defendants' motions for summary judgment

### A.    Legal standard for summary judgment

Defendants Corizon and Dr. Schmidt seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

2

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures under the PLRA

3

was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.   This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).   In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.   *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"   *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).   A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.   *Id.* at ¶ Q.   If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.   *Id.* at ¶¶ Q and S.   The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).   The prisoner must send the Step I grievance to the appropriate grievance coordinator.   *Id.* at ¶ W.   If the prisoner is dissatisfied with the Step I response, or does

4

not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### 3.    Discussion

Defendants contend that plaintiff failed to exhaust any grievances with respect to her claims in this lawsuit, *i.e.*, that defendants Corizon and Dr. Schmidt were deliberately indifferent to her serious medical needs by denying her hormone treatment and refusing her entry into the rolls of transgender female prison inmates.

Defendant Corizon points out that plaintiff did not file any grievances against it. Corizon's statement is supported by the grievance records attached to defendants' brief.  *See* Grievance Records (ECF No. 34-2).

Defendant Dr. Schmidt has identified one grievance which plaintiff directed at her, DRF-19-12-2743-12E ("2743").   This grievance, dated November 21, 2019, involves an incident which occurred on November 18, 2019.   Grievance 2743 (PageID.373).   In this grievance, plaintiff stated that she is diagnosed with GID and that Dr. Schmidt violated a policy directive because the doctor "refused to place me in a Detail for (Gender Id cell only) without cause." *Id*. Plaintiff stated that she has been raped before and that the doctor's acts could place her in physical harm.  *Id*.

The MDOC rejected the grievance as untimely.  *Id*.  While plaintiff dated the grievance on November 21, 2019, it was not received at Step I until December 5, 2019.  *Id*. While plaintiff filed a Step II appeal, she gave no explanation for the late filing of the grievance.

5

PageID.371.  In the Step II appeal response, the MDOC noted that the original grievance was rejected as untimely, that the grievance has been investigated, and cited PD 03.02.130 ¶ J ("Reasons For Rejection"):

> J. Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if:
>
>> 4 . The grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs.
>>
>> 5. The grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer.

> You have failed to follow Policy and Procedure as it relates to this matter.

> **Therefore, THE STEP II APPEAL IS REJECTED.**

PageID.372 (emphasis in original).   The rejection was upheld at Step III.   PageID.370. In short, plaintiff did not properly exhaust this grievance.

In response to defendants' motion, plaintiff filed a "Counter-Summary-Judgment against Defendants Corizon inc. and D.O. Patricia Schmidt 'failure to Exhaust Remedies'" (Plaintiff's Response) (ECF No. 40).   However, plaintiff's filing does not respond to defendants' motion.   While plaintiff contends that she exhausted a number of grievances, she does not identify those grievances.   Rather, plaintiff's lists blank lines rather than grievance numbers (*e.g.*, "DRF _____").   *Id.* at PageID.430.   Later, plaintiff filed a "Statement of Exhaustion" (ECF No. 48), which consists of a Step II appeal and a Step III decision rejecting another grievance, DRF-20-02-0385-28i ("385") (PageID.455-456).   Plaintiff has not supplied a copy of the rejected grievance (Step I), nor explained how this grievance relates to the exhaustion issue raised by defendants.   Furthermore, Grievance 385 this grievance is not relevant to plaintiff's claim,

because the incident grieved occurred on January 28, 2020, more than two weeks *after* plaintiff filed this lawsuit.

Based on this record, plaintiff failed to properly exhaust his claims against defendants Corizon and Dr. Schmidt.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, defendants' motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment based on failure to exhaust filed by defendants Corizon and Dr. Schmidt (ECF No. 34) be **GRANTED** and that they be **DISMISSED** from this action.


Dated:   October 13, 2020                         /s/ Ray Kent
                                                  United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).